1  PAUL A. RIGALI (SBN 262948)
   *prigali@larsonllp.com*
2  JERRY A. BEHNKE (SBN 180462)
   *jbehnke@larsonllp.com*
3  CATHERINE S. OWENS (SBN 307626)
   *cowens@larsonllp.com*
4  CHLOE N. COLEMAN (SBN 343100)
   *ccoleman@larsonllp.com*
5  **LARSON LLP**
   555 South Flower Street, Suite 4400
6  Los Angeles, CA  90071
   Telephone:  213.436-4888
7  Facsimile:   213.623-2000

8  Attorneys for Defendants
   SAFEGUARD METALS LLC AND
9  JEFFREY S. SANTULAN

10                UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  SECURITIES AND EXCHANGE          CASE NO. 2:22-cv-00693 JFW (SKx)
    COMMISSION,                      Hon. John F. Walter, Crtrm 7A
14
                                     **DEFENDANTS' NOTICE OF**
15            Plaintiff,             **MOTION AND MOTION TO DISMISS**
                                     **PLAINTIFF'S COMPLAINT;**
16       v.                          **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES**
17
    SAFEGUARD METALS LLC AND         **[Fed. R. Civ. P. 12(b)(6)]**
18  JEFFREY S. SANTULAN,
                                     *[Filed concurrently with*
19            Defendants.           *[Proposed] Order]*

20                                   Date:      June 6, 2022
                                     Time:      1:30 p.m.
21                                   Crtrm:     7A

22                                   Complaint Filed:   February 1, 2022
                                     Trial Date:        None
23

24

25

26

27

28
                                              Case No.  2:22-cv-00693 JFW (SKx)

                     DEFENDANTS' MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 6, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants Safeguard Metals LLC and Jeffrey S. Santulan (collectively, "Defendants") will and hereby do, move to dismiss claims for relief pled by Plaintiff Securities and Exchange Commission in its Complaint against Defendants in the above-captioned matter. Defendants bring this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

1. Plaintiff's Complaint fails to plead the alleged fraudulent scheme, false claims, and causes of action with particularity as required by Federal Rule of Civil Procedure 9(b);

2. Plaintiff's Complaint should be dismissed because each and every cause of action fails to state a plausible claim on which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the file and records in this case, and any further argument the Court deems just and proper at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 27, 2022 via Zoom, and which was unsuccessful in resolving the issues raised by this Motion.

Dated: May 4, 2022                    **LARSON LLP**


By: /s/ *Paul A. Rigali*
      PAUL A. RIGALI
      JERRY A. BEHNKE
      CATHERINE S. OWENS
      CHLOE N. COLEMAN

      Attorneys for Defendants
      SAFEGUARD METALS LLC AND
      JEFFREY S. SANTULAN

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD ......................................................................... 2

III.   ARGUMENT ...................................................................................... 4

    A.    The Complaint Fails To Plead Claims Under Section 10(B) And Rule 10b-5 Of The Securities Exchange Act ......................................... 4

        i.     The Complaint Fails To Plead Any Alleged Misrepresentations With Particularity ......................................... 5

        ii.    The Complaint Fails To Plead Materiality Altogether .............. 10

        iii   The Complaint Fails To Sufficiently Plead That Any Alleged Transactions Involved Securities ................................. 11

        iv.   The Complaint Fails To Plead With Particularity That Santulan Is Liable As An Aider And Abettor Or Control Person .......................................................................................... 12

    B.    The Complaint Fails To Plead Claims Under The Investment ADVISERS Act ................................................................................. 14

IV.   CONCLUSION ............................................................................... 16

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................... 2, 3

6

7

*Baker v. Henderson, Franklin, Starnes & Holt*,
    797 F.2d 490 (7th Cir. 1986) .............................................................. 13

8

9

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................... 10

10

11

*Chiarella v. United States*,
    445 U.S. 222 (1980) ............................................................................. 8

12

13

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ............................................................ 3, 5

14

15

*Corsair Cap. Partners, L.P. v. Wedbush Morgan Sec., Inc.*,
    24 F. App'x 795 (9th Cir. 2001) ........................................................... 8

16

17

*Epstein v. Washington Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ................................................................ 3

18

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    104 F. Supp. 3d 441 (S.D.N.Y. 2015) ................................................ 10

19

20

*Gebhart v. S.E.C.*,
    595 F.3d 1034 (9th Cir. 2010) ........................................................ 4, 10

21

22

*Greenhouse v. MCG Capital Corp.*,
    392 F.3d 650 (4th Cir. 2004) ............................................................. 10

23

24

*Hollinger v. Titan Capital Corp.*,
    914 F.2d 1564 (9th Cir. 1990) ........................................................... 12

25

26

*S.E.C. v. Belmont Reid & Co.*
    794 F.2d 1388, 1391 (9th Cir. 1986) .................................................. 11

27

28

*Levine v. Diamanthuset, Inc.*,
    950 F. 2d 1478 (9th Cir. 1991) .......................................................... 11

*Lipow v. Net1 UEPS Tech., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015) .................................................................. 5

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .............................................................................. 3

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .............................................................................. 7

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .......................................................................... 8, 9

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ............................................................................ 7

*S.E.C. v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012) ............................................................................ 12

S.*E.C. v. Berry*,
    580 F. Supp. 2d 911 (N.D. Cal. 2008) ............................................................ 13

*S.E.C. v. Bolla*,
    401 F. Supp. 2d 43 (D.D.C. 2005) .............................................................. 14, 16

*S.E.C. v. Daifotis*,
    874 F. Supp. 2d 870 (N.D. Cal. 2012) ............................................................ 12

*S.E.C. v. Ficeto*,
    839 F. Supp. 2d 1101 (C.D. Cal. 2011) .......................................................... 14

*S.E.C. v. R.G. Reynolds Enterprises, Inc.*,
    952 F.2d 1125 (9th Cir. 1946) ........................................................................ 11

*S.E.C. v. Steadman*,
    967 F2d 636 (D.C. Cir. 1992) ......................................................................... 14

*S.E.C. v. Todd*,
    642 F.3d 1208 (9th Cir. 2011) ........................................................................ 13

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ........................................................................................ 11

*S.E.C. v. Zanford*,
    535 U.S. 813 (2002) ........................................................................................ 11

*Security and Exchange Commission v. Francisco*,
  262 F. Supp. 3d 985 (C.D. Cal. 2017)...........................................................9

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...................................................................3

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ...............................................................................10

*In re VeriFone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) .....................................................................7

*Vernazza v. S.E.C.*,
  327 F.3d 851 (9th Cir. 2003) ..................................................................14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................4, 5, 6

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ...................................................................3

**Federal Statutes**

Investment Advisors Act
  § 202(a)(11) .........................................................................................15
  § 206(1)...........................................................................................1, 14
  § 206(2)...........................................................................................1, 14

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...........................................................................2

Securities Exchange Act
  § 10(b)..............................................................................................*passim*
  Rule 10b-5 .........................................................................................*passim*

**Other Authorities**

*Applicability of the Investment Advisers Act of 1940 to Financial
  Planners, Pension Consultants, and Other Persons Who Provide
  Others with Investment Advice as a Component of Other Financial
  Services*, Investment Advisers Act Release No. 1092 (Oct. 8, 1987)...............15

DEFENDANTS' MOTION TO DISMISS

Harvard Law School Forum on Corporate Governance, *SEC Adopts Money Market Reforms* (Aug. 16, 2014), https://corpgov.law.harvard.edu/2014/08/16/sec-adopts-money-market-fund-reforms .......................................................................................... 8

*Regulation of Investment Advisers by the U.S. Securities and Exchange Commission*, at 2 (Mar. 2013), available at https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf. ......................................................................................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

The complaint fails to state a claim for relief and should be dismissed in its entirety. The complaint alleges that Defendants Safeguard Metals, LLC ("Safeguard") and Jeffrey S. Santulan ("Santulan") executed a fraudulent scheme in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act[1] and Section 206 of the Investment Advisers Act.[2]  All claims fail as a matter of law.

First, the complaint generally alleges that Defendants executed a fraudulent scheme but fails to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The complaint broadly asserts that Defendants made false and misleading statements about Safeguard's business, the value of precious metals, the safety of customers' securities' accounts, and Safeguard's compensation.  The complaint alleges that Defendants made these statements through unnamed "sales agents" who called clients on unknown dates and times.  In some instances, the complaint does not even describe a specific false statement, but rather concludes that Defendants made certain general misrepresentations.  The complaint clearly fails to allege with specificity the "who, what, where, when, and how" of the alleged fraud.

Second, even assuming the complaint satisfied the particularity requirements of Rule 9(b) (it does not), the complaint altogether fails to allege that any of these purported misstatements were material—a required element of its fraud claims. That alone mandates dismissal.

Third, the transactions alleged in the complaint do not involve securities and

---

[1]   Section 10(b) is codified at 15 U.S.C. §78j, and shall be referred to herein as "Section 10(b)."  Rule 10b-5 is promulgated under 17 C.F.R. 240.10b-5, and shall be referred to herein as Rule 10b-5.

[2]   Sections 206(1) and 206(2) of the Investment Advisers Act are codified at 15 U.S.C. §§ 80b-6(1) and 80b-6(2), respectively, and shall be referred to herein as Sections 206(1)-(2).

thus fall outside the purview of Section 10(b).  The Ninth Circuit has held that transactions relating to the sale and purchase of gold, such as here, are not investment contracts subject to Section 10(b).  And even if it were true that customers liquidated securities holdings to purchase precious metals, such allegations provide, at best, a tangential connection to a securities transaction.  Such allegations are insufficient to support a cause of action for securities fraud under Section 10(b).

Fourth, the complaint fails to plead sufficient facts to establish that Defendants acted as "investment advisers" under the Investment Advisers Act. Defendants are in the business of selling precious metals, and the SEC's own guidance provides that advice relating to precious metals is not advice about securities.  To the extent the complaint alleges that Defendants otherwise acted as investment advisers, the complaint fails to allege any facts that identify what specific securities advice was given, who made the statements, and when such statements were made, as required to state a claim under Rule 9(b).

Finally, claims Three, Four, and Five, which allege aiding and abetting and control person liability, fail as a matter of law because the complaint does not plead a primary violation of the securities laws as set forth above.  Moreover, the complaint alleges that Safeguard committed the primary violation and that Santulan is liable as an aider/abettor and control person.  But an entity cannot be the primary violator.  Thus, because the complaint does not identify any *individual*, other than Santulan, as the primary violator, there can be no secondary liability and claims Three, Four, and Five should be dismissed.

Accordingly, for these reasons and as explained in more detail below, the complaint should be dismissed in its entirety.

## II. <u>LEGAL STANDARD</u>

The Court must grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure where, as here, the complaint fails to state a claim for

relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] To meet this standard, Plaintiff must plead more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* at 678. That is, the complaint must plead "non-conclusory 'factual content'" that "plausibly suggest[s]" a claim for relief. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). While the Court must accept facts alleged in a complaint, it need not accept legal conclusions. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Indeed, conclusory allegations or legal conclusions masquerading as facts will not defeat a motion to dismiss. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *Iqbal*, 556 U.S. at 678-79 (noting that "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions"). Therefore, a complaint that does not "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" must be dismissed. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In addition, because the complaint alleges fraud, it must also meet the heightened pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pr. 9(b). This requirement is met only if the complaint "identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996)). Specifically, "[t]o satisfy Rule 9(b):

> a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an

---

[3]   Unless stated otherwise, all internal citations are omitted and all emphasis is added.

explanation as to why the statement or omission complained of was false or misleading."

*Cooper*, 137 F.3d at 625 (emphasis in original).   Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## III.   ARGUMENT

### A.   The Complaint Fails to Plead Claims Under Section 10(b) and Rule 10b-5 of The Securities Exchange Act

Claims One, Three, and Five of the complaint allege that Defendants participated in and implemented a "fraudulent scheme" in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act.   The complaint alleges that unnamed "sales agents" called potential clients, convinced them to liquidate their qualified retirement plans and set up a self-directed individual retirement account (SDIRA), transfer the cash to the SDIRA, and then use the proceeds to purchase precious metals from Safeguard at excessive markups.   Compl. ¶ 5.   Defendants allegedly accomplished this so-called "scheme" by making false statements about Safeguard's business, the safety and liquidity of the clients' securities investments, and Safeguard's compensation. *Id.*

To plead a claim for securities fraud, a plaintiff must set out facts demonstrating that each of the alleged statements made by Defendants are (1) false or misleading, (2) material, (3) made with scienter, and (4) made in connection with the purchase or sale of a security.   *Gebhart v. S.E.C.*, 595 F.3d 1034, 1040 (9th Cir. 2010).   While scienter may be pled generally, all remaining elements of the alleged fraud must be pled with particularity, meaning the complaint must provide the "who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106.   The complaint fails to plead any elements of securities fraud with the requisite particularity, and fails to demonstrate that Santulan was an aider/abettor or

control person, rendering Claims One, Three, and Five deficient.

        i.        <u>The Complaint Fails to Plead Any Alleged Misrepresentations With Particularity</u>

First, the complaint does not plead any alleged misrepresentations with the required specificity. Throughout the complaint, Plaintiff declares that Defendants communicated and published "lies" to customers through Safeguard's website and unnamed "sales agents," but fails to explain (1) ***how*** those statements were false at the time they were made, (2) ***when*** those statements were made, and (3) ***who*** specifically created or made those statements. *Vess*, 317 F.3d at 1106; *Lipow v. Net1 UEPS Tech., Inc.*, 131 F. Supp. 3d 144, 168 (S.D.N.Y. 2015) ("A violation of Section 10(b) and Rule 10b–5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*.") (emphasis in original).

*Alleged misstatements about Safeguard's business*. For example, the complaint alleges that Defendants made misstatements about Safeguard's business, Compl. ¶¶ 17-19, but does not plead any facts that meet the particularity requirements of Rule 9(b). The complaint claims that unnamed sales agents told potential clients that Safeguard was a "full service firm" and "one of the largest wealth protection firms in North America." *Id.* ¶ 18. However, the complaint fails to allege the identities of the sales agents who purportedly made the statements, the dates on which any of those alleged statements were made, or how those statements were even false when made. Similarly, the complaint generally claims that Defendants falsely represented to have managed $11 billion in assets on Safeguard's website, but pleads no facts establishing the falsity of the statement at the time it was made. *Id.* The SEC simply declares it is false. That is insufficient. *See Lipow*, 131 F. Supp. 3d at 168; *Cooper*, 137 F.3d at 625.

The same is true about the allegations regarding Safeguard's LinkedIn page. Compl. ¶ 20. The complaint alleges that Safeguard's LinkedIn page was connected

to fake profiles of people in the securities industry, such as "the president of a large, international investment bank as Safeguard's CFO" and "the general counsel of a large, broker-dealer as Safeguard's in-house attorney." *Id.* ¶ 20.  However, the complaint fails to include any facts establishing the falsity of the linked information, such as the names of the individuals or the names of the investment bank or broker-dealer, much less explain why neither of those individuals had any relationship with Safeguard.  More importantly, the complaint lacks any facts demonstrating that Santulan was responsible for linking those pages or that Santulan even had knowledge of them or the purported falsity of the information they contained.  Instead, the complaint contains a ***single conclusory sentence*** that: "Santulan was responsible for the creation of Safeguard's website and LinkedIn Page and had authority over them." *Id.* ¶ 21.  Indeed, the complaint fails to allege that Defendants were responsible for any of the purported fake profiles that were allegedly linked to Safeguard's LinkedIn page.

The complaint also alleges that a sales script characterized a sales agent as having more than 17 years of experience in wealth protection and specializing in 401k/IRAs, and that "at least" one unnamed sales agent allegedly told customers that he held a securities license.  Compl. ¶ 22.  The complaint contains a conclusory allegation that "[n]one of Safeguard's employees had experience remotely fitting that description," without putting forth any facts that demonstrate the alleged falsity, including the names of any of sales agents that purportedly made these statements when and to whom these statements were allegedly made.  *Id*.  Again, Plaintiff fails to plead the required "who, what, when, where, and how" in support of its fraud claims.  *Vess*, 317 F.3d at 1106.  These defects permeate throughout the entire complaint.

*Alleged misstatements about the safety and liquidity of customers' holdings*. The complaint's allegations regarding statements about clients' accounts fail for similar reasons.  For instance, the complaint alleges that Defendants falsely told

customers that the stock market was going to crash by making forward-looking statements, such as:

- "The top financial echelons and economists in the US are saying this coming recession *is going to be* worse than 2008."
- "They're saying the last recession *is going to be* a walk in the park compared *to what is coming*."
- [Y]ou're just *going to get* wiped out completely, like most people did in '08."
- "[W]hy do you still have your life savings in the *most expensive* stock market of all time, in the 11th year of the most inflated bull market in history?"
- "You know what the definition of insanity is, right?  It's doing the same thing over and over again expecting a different result.  That's exactly what you're doing in the stock market.  You lost [amount] in the 2008 crash, and here you are *about to* lose it all again."

Compl. ¶ 25.   Aside from failing to plead **who** specifically made these statements, **when**, and **to whom**, the complaint fails to plead any facts that show **how** these forward-looking statements are false or misleading.  In order for a forward-looking statement to be false, Plaintiff must plead facts showing that Santulan and the unknown sales agents (1) did not actually believe the statement, (2) did not have a reasonable basis for believing it, or (3) were aware of facts that seriously undermined the accuracy of the statement.  *See Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996).   The complaint does not plead facts that serve any of these functions, and instead, lines up various quotes allegedly taken from a sales script, without even contending that they are false, that Santulan or the sales agents thought they were false, or that they conveyed a false or misleading impression. And the fact that any of these forecasts may have turned out to be incorrect does not retroactively make them false or misleading.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993) ("The fact that the prediction proves to be wrong in hindsight does not render the statement untrue when made.").

Nor does the complaint include any facts that plausibly suggest that Defendants made false statements about the liquidity of customers' retirement

accounts.   Without providing any specific statements in the complaint, Plaintiff broadly asserts that Santulan and various "sales agents" told customers that their retirement money was at risk due to a new law that allowed financial institutions to freeze retirement accounts in the event of financial turmoil.  Compl. ¶¶ 26-29 (no allegations of the specific statements themselves, who specifically made the statements, or when the statements were allegedly made).  But by Plaintiff's own admission, *id.* ¶ 29, such a law *was* passed.  In 2014, reforms were adopted that included mandatory and discretionary liquidity fees as well as discretionary redemption gates.[4]   This meant that in the event of a stock market crash, the brokerage firms may, and in some instances were required, to impose fees on individuals seeking to cash out their investments and to impose redemption gates that prohibited investors from liquidating their funds for a certain period.  Thus, to the extent Defendants made any alleged statements about the liquidity of money market fund investments, such statements were *correct*.  There was no fraud.

*Alleged misstatements about protections afforded by precious metals*.  The complaint's allegations regarding the protection provided by precious metals likewise fail to meet the high burden of Rule 9(b).  Compl. ¶¶ 30-31.  Plaintiff alleges that Defendants failed to disclose that the precious metal coins that Safeguard sold were not insured by the FDIC or the SIPC.  But in order to plead fraud by omission, Plaintiff is required to plead a duty to disclose the information. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) ("Rule 10b–5 is violated by nondisclosure only when there is a duty to disclose."); *Chiarella v. United States*, 445 U.S. 222, 235 (1980).  "Such a duty arises out of a relationship of trust and confidence," such as a fiduciary relationship. *Corsair Cap.*

---

[4]   *See* Harvard Law School Forum on Corporate Governance, *SEC Adopts Money Market Reforms* (Aug. 16, 2014), https://corpgov.law.harvard.edu/2014/08/16/sec-adopts-money-market-fund-reforms/.

Case No.  2:22-cv-00693 JFW (SKx)

DEFENDANTS' MOTION TO DISMISS

*Partners, L.P. v. Wedbush Morgan Sec., Inc.*, 24 F. App'x 795, 797 (9th Cir. 2001) (citing *Chiarella*, 445 U.S. at 230).  Conspicuously absent from the complaint are any allegations that Defendants owed a duty to disclose or any facts that plausibly suggest a relationship of trust or confidence with potential clients.  There can be no liability for failing to speak.  *Paracor Fin., Inc.*, 96 F.3d at 1158.

Nor can Defendants be liable for any purported "recommendations" that they provided to customers.  Plaintiff alleges that unnamed sales agents "recommended that investors place up to 20% of their assets in physical precious metals," but instead would "regularly invest 100% of the investors' SIDRAs in gold and silver coins."  Compl. ¶ 31.  It is unclear how the fact that some clients used 100% of their funds to purchase precious metals had anything to do with deception on the part of Defendants.  Those allegations clearly fail to plead a claim for fraud as no false statements appear to be alleged.

*Alleged misstatement about Safeguard's compensation*.  Finally, the complaint fails to plead any specific facts that show Defendants misled customers about the markups charged on the precious metals sold.  *Id.* ¶¶ 32-39.  The complaint alleges that Defendants, through the Safeguard website and account agreements, told customers that they charged markups "***usually*** between 4% and 23%" on each coin.  *Id.* ¶ 34.  Then, after 2020, Defendants allegedly changed the account agreement to provide that Safeguard charged "***usually*** [between] 5% to 33%."  *Id.* ¶ 35.  The complaint alleges these statements were misleading because Defendants charged an average markup of approximately 64%.  *Id.* ¶ 36.  As Plaintiff concedes, Defendants' purported statements were never absolute, as Defendants apparently told customers that they "usually" marked up the value of the coins within the prescribed range.  Courts routinely hold that statements, such as these, that are "couched in vague, hedging language," fail to state a claim for fraud under Rule 9(b).  *See, e.g.*, *Security and Exchange Commission v. Francisco, 262 F. Supp. 3d 985, 990* (C.D. Cal. 2017) (dismissing fraud complaint under Rule

9(b) because, *inter alia*, the statements "The PPMs for the Caffe Primo LPs *typically* state…" and "*Approximately* 131 investors paid into escrow about $6.55 million…" were "insufficiently vague and accordingly must be dismissed").

### ii.     The Complaint Fails to Plead Materiality Altogether

Even if one could look past the complaint's failures to plead with particularity, the complaint altogether fails to plead that any of the alleged false statements are material—a required element of securities fraud. *Gebhart*, 595 F.3d at 1040. A fact is material if there is a substantial likelihood that its disclosure would impact the decision of a reasonable person because it "significantly altered the 'total mix' of information made available" in the market. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49 (1976) (rejecting materiality test that provided that individual "might" consider the information important). In adopting this test, the Supreme Court has been "careful not to set too low a standard of materiality" for fear that "a minimal standard might bring an overabundance of information within its reach." *Basic*, 485 U.S. at 231. Accordingly, to satisfy the materiality threshold, a plaintiff must plead facts that show the information or its omission was "significant" in that a reasonable person "would" consider it in her decision-making process. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 557 (S.D.N.Y. 2015).

Here, the complaint is devoid of any facts that explain how or why any of the alleged misstatements were material to customers' decisions to purchase precious metals from Defendants. In fact, the only time the complaint even uses the word "material" is where it haphazardly concludes that Defendants made "material" statements. Compl. ¶¶ 14, 46, 52, 60. That alone warrants dismissal of the entire complaint. *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir. 2004).

//

iii.   The Complaint Fails to Sufficiently Plead That Any Alleged Transactions Involved Securities

The complaint also fails to plead with particularity that the alleged misrepresentations or omissions were made in connection with the purchase or sale of a security.  *Gebhart*, 595 F.3d at 1040.  The complaint alleges that customers entered into contracts with Defendants for the purchase of precious metals.  Compl. ¶ 34.  Those transactions are subject to the securities laws only if they qualify as "investment contracts" under the Supreme Court's three-prong test in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946).  *See S.E.C. v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1946).  "The elements of this test are (1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others."  *R.G. Reynolds Enterprises*, 952 F.2d at 1130.

The Ninth Circuit has held that contracts involving the purchase of gold do not qualify as investment contracts subject to Section 10(b).  In *S.E.C. v. Belmont Reid & Co.*, the Ninth Circuit held that the sale and purchase of gold coins did not constitute an investment contract because the profits to the buyer depended on fluctuations of the gold market, rather than the managerial efforts of the seller, and therefore the profits were not derived solely from the efforts of others (failing the third prong of the *Howey* test).  794 F.2d 1388, 1391 (9th Cir. 1986). Likewise, here, to the extent any customers purchased precious metals from Defendants, the customers' profits were dependent on the market price of the coins, and not on any managerial efforts of Defendants.

While Plaintiff may argue that its claims are "in connection with" the purchase or sale of a security because Defendants purportedly induced customers to liquidate their retirement accounts, the Supreme Court has cautioned that the securities statute "must not be construed so broadly as to convert every [claim of] common-law fraud that happens to involve securities into a violation of § 10(b)." *S.E.C. v. Zanford*, 535 U.S. 813, 820 (2002).  Here, the purported fraud ultimately

depended on the purchase of precious metals from Defendants (a non-security). While the customers' purchases of such metals may, at best, be "tangentially" related to a securities transaction, as alleged by Plaintiff, the Ninth Circuit has made clear that something more is required.  *See Levine v. Diamanthuset, Inc.*, 950 F. 2d 1478, 1485 (9th Cir. 1991) ("The 'in connection with' language contained in section 10b and rule 10b-5 requires something more than any fraud tangentially related to a securities transaction.").  Thus, the complaint's fraud claims fail for that reason as well.

> iv.    <u>The Complaint Fails to Plead With Particularity that Santulan Is Liable As an Aider and Abettor or Control Person</u>

Finally, the complaint fails to adequately plead aider and abettor or control person liability.  To plead secondary liability, Plaintiff must plead facts that show (1) a primary violation of the securities laws (for both claims), (2) that Santulan had knowledge of the primary violation (for aiding and abetting), (3) that Santulan provided "substantial assistance" in carrying out the primary violation (for aiding and abetting),[5] and (4) that Santulan exercised actual power or control over the primary violator (for control person liability).[6]  The complaint fails to meet any of these requirements.

First, as explained at length above, Plaintiff has failed to plead with particularity that Defendants violated the securities laws.  Nor has Plaintiff alleged any particular facts that demonstrate that a person *other* than Santulan committed the primary violation.  "Aiding and abetting requires proving a primary violation by

---

[5]    The elements of aiding and abetting are "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *S.E.C. v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).

[6]    The elements of control person liability are (1) a primary violation of federal securities laws and (2) the exercise of actual power or control over the primary violator.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990).

someone else," and "substituting the [Safeguard] *entit[y]* for [Santulan] as the primary violator is not sufficient." *S.E.C. v. Daifotis*, 874 F. Supp. 2d 870, 886-87 (N.D. Cal. 2012) (emphasis in original) (dismissing aiding and abetting Rule 10b-5 and Advisers Act claims for failing to prove a primary violation by someone other than the individual defendant). Thus, because the complaint does not identify any individual other than Santulan as the primary violator, there is no aiding and abetting or control person liability.

Second, Plaintiff has otherwise failed to plead facts that demonstrate the required knowledge and participation necessary to hold Santulan liable as an aider/abettor or control person. Plaintiff concedes that Santulan allegedly created only the "*initial*" sales pitch, drafted "*certain*" sales scripts, and personally trained only "*some*" of Safeguard's sales agents, as some agents apparently received on-the-job training from "*others* at Safeguard." Compl. ¶¶ 24, 41-42. In addition, the complaint claims that Santulan allegedly handled Safeguard's business only "*[a]t the beginning* of the [alleged] scheme," without indicating what time period it considers the "beginning" or who oversaw operations after that point. *Id.* ¶ 15. Other than these few allegations, the complaint just broadly asserts that Santulan "controlled" Safeguard and its operations, without elaboration. *Id.* ¶¶ 5, 12.

These allegations are too uncertain and vague to meet the high bar of Rule 9(b), and certainly do not rise to the level of "substantial assistance" or "actual power or control" necessary to impose aider/abettor or control person liability. *See*, *e.g.*, S.E.C. v. Berry, 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008) ("The SEC's conclusory pleadings that Ms. Berry 'reviewed' and 'discussed' various filings is insufficient to plead (with particularity) Ms. Berry's role in the purported fraud."); *Baker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir. 1986) (aiding and abetting requires "more than just a little aid"). And while Santulan may have owned 100% of Safeguard during the relevant time period, that alone does not make him liable as a "control person." *S.E.C. v. Todd*, 642 F.3d 1208, 1223 (9th

1    Cir. 2011) ("The fact that a person is a CEO or other high-ranking officer within a

2    company does not create a presumption that he or she is a 'controlling person.'").

3         Accordingly, claims three (aider/abettor) and five (control person) should

4    likewise be dismissed for failure to state a claim.

5         **B.**    **The Complaint Fails to Plead Claims Under the Investment**

6             **Advisers Act**

7         The complaint also asserts that Defendants violated Sections 206(1) and

8    206(2) of the Investment Advisers Act on theories of direct (Claim Two) and

9    aider/abettor (Claim Four) liability. "Advisers Act § 206 prohibits advisers from,

10    directly or indirectly, employing a scheme to defraud clients or engaging in

11    practices which operate as a fraud upon clients." *Vernazza v. S.E.C.*, 327 F.3d 851,

12    858 (9th Cir. 2003). To sufficiently plead a claim under the Investment Advisers

13    Act, Plaintiff must show that (1) Defendants acted as investment advisers, (2)

14    Defendants made false or misleading statements, (3) the statements were material,

15    (4) Defendants used the mails or others means or instrumentality of interstate

16    commerce, directly or indirectly, and (5) Defendants acted negligently or with

17    scienter. *Id*.[7] *See also S.E.C. v. Bolla*, 401 F. Supp. 2d 43, 66-73 (D.D.C. 2005).

18    The elements of aiding and abetting violations of the Investment Advisers Act are

19    identical to those for Section 10(b) and Rule 10b-5. *Bolla*, 401 F. Supp. 2d at 58.

20    And like Section 10(b) and Rule 10b-5, Plaintiff is required to plead its Investment

21    Advisers Act claims with particularity. *See S.E.C. v. Ficeto*, 839 F. Supp. 2d 1101,

22    1105 (C.D. Cal. 2011). Plaintiff has failed to do so.

23         First, as explained above, Plaintiff has failed to plead any alleged false or

24    misleading statements with particularity and has altogether failed to plead that any

25

26    _____

27    [7]    Section 206(1) requires a finding of scienter (intent to deceive or extreme recklessness), *see Vernazza v. S.E.C.*, 327 F.3d 851, 858 (9th Cir. 2003), whereas

28    Section 206(2) only requires negligence, *see S.E.C. v. Steadman*, 967 F2d 636, 643, n.5 (D.C. Cir. 1992).

such statements were material.  The Investment Advisers Act claims should be dismissed on that basis alone.

Second, Plaintiff has failed to plead that Defendants acted as "investment advisers."  The Act defines an investment adviser as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities."  Investment Advisers Act § 202(a)(11) (codified at 15 U.S.C. § 80b-2(11)).  Thus, to fall within the definition of an investment adviser, Plaintiff must show that (1) for compensation, (2) Defendants were engaged in the business of, (3) providing advice to others or issuing reports or analyses regarding securities. *See Applicability of the Investment Advisers Act of 1940 to Financial Planners, Pension Consultants, and Other Persons Who Provide Others with Investment Advice as a Component of Other Financial Services*, Investment Advisers Act Release No. 1092 (Oct. 8, 1987).[8]

Plaintiff has not pled any specific facts that show Defendants fall within this definition.  By Plaintiff's own admission, Defendants are in the business of selling precious metal coins.  Compl. ¶ 5.  Nowhere in the complaint does Plaintiff allege that Defendants held themselves out as "investment advisers" or that they received compensation from clients for giving securities advice.  Indeed, guidance provided by the SEC expressly provides that "advice about real estate, **coins**, **precious metals**, or commodities is **not** advice about securities."[9]  While Plaintiff claims that Defendants purportedly induced clients to liquidate their securities investments,

---

[8]  *See Regulation of Investment Advisers by the U.S. Securities and Exchange Commission*, at 2 (Mar. 2013), available at https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf.
[9]  *Id.* at 3.

Compl. ¶ 40, those allegations are, at best, vague and do not meet the heightened pleading requirements of Rule 9(b).  For example, the complaint broadly claims in a *single* paragraph that Defendants would contact the client's broker-dealer to initiate the liquidation of the client's securities holdings and would sometimes join clients on calls to the broker-dealer.  *Id.* ¶ 43.  The complaint does not explain what advice, if any, was given to clients on those calls, or if that advice concerned the client's securities' investment.   The same is true for the complaint's other generic allegations; nowhere does the complaint allege facts that set forth what specific securities advice was given, who specifically gave the purported advice, or when. *See, e.g.*, *id.* ¶¶ 25-30, 41.

Finally, Plaintiff's claim for aiding and abetting violations of the Investment Advisers Act (Claim Four) should also be dismissed for the same reasons why its claim for aiding and abetting violations of Section 10(b) and Rule 10b-5 (Claim Three) fail.  *Bolla*, 401 F. Supp. 2d at 58.

## IV.   CONCLUSION

Accordingly, because Plaintiff has failed to plead the required "who, what, where, when, and how" for its fraud claims, and because the complaint otherwise fails to plead sufficient facts to state a claim for relief, the Court should dismiss the complaint in its entirety and without leave to amend.

Dated:  May 4, 2022                             **LARSON LLP**


By: /s/ *Paul A. Rigali*
PAUL A. RIGALI
JERRY A. BEHNKE
CATHERINE S. OWENS
CHLOE N. COLEMAN

Attorneys for Defendants
SAFEGUARD METALS LLC AND
JEFFREY S. SANTULAN

**Certification of Conference Pursuant to Local Rule 7-3**

Pursuant to Local Rule 7-3, on April 27, 2022, the parties met and conferred regarding the grounds for Defendants' motion to dismiss.  Plaintiff indicated that it opposes the motion.

Dated:  May 4, 2022                             **LARSON LLP**


By: /s/ *Paul A. Rigali*
PAUL A. RIGALI
JERRY A. BEHNKE
CATHERINE S. OWENS
CHLOE N. COLEMAN

Attorneys for Defendants
SAFEGUARD METALS LLC AND
JEFFREY S. SANTULAN